UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STEVEN OGDEN | * | NO:   12-1835 |
| | * | |
| VERSUS | * | SECTION:   L |
| | * | JUDGE ELDON E. FALLON |
| GLOBALSANTAFE OFFSHORE SERVICE | * | MAGISTRATE:  4 |
| AND TRANSOCEAN OFFSHORE | * | JUDGE KAREN WELLS ROBY |
| DEEPWATER DRILLING, INC. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND ALTERNATIVELY MOTION TO TRANSFER VENUE**

This matter arises out of the lower back injuries sustained by plaintiff Steven Ogden on or about April 8th, 2012 while he was employed by GlobalSantaFe Offshore Services working on a "Transocean" oil rig located off the coast of Egypt.  Mr. Ogden is a resident of Mississippi and he received his paychecks from a company known as GSF which listed "4 Greenway Plaza" in Houston, Texas, as its business address on the paycheck stubs issued to Mr. Ogden.[1]

At the outset, plaintiff's counsel states that he objects to the somewhat unprofessional, and certainly accusatory, tone that the defendants' motion.  Defendants casually state that this is not plaintiff's "first rodeo" and that naming various Transocean entities (which they purport to be entities named in bad faith) appears to be the "M.O." of plaintiff's counsel.  These comments are unnecessary and the facts below will speak for themselves.  These defendant entities are trying to hide behind voluminous contracts for the drilling services of the individual rigs which were operating in foreign overseas locations.  The employees aboard the rigs have no idea of the names of these contract entities and certainly have no belief or expectation that they are actually "employed" by the foreign corporate entities formed solely for purposes of drilling in foreign

---

[1] Attached as Exhibit 1 please find paycheck stubs for Mr. Ogden indicating the issuer as GlobalSantaFe Offshore Services with a return address of 4 Greenway Plaza, Houston, Texas.

countries. Rather, these individuals are issued paychecks and W-2 forms from an entity known as "GlobalSantaFe Offshore Services" (GSF) which has listed its principal place of business as 4 Greenway Plaza, the building in Houston, Texas known as the "Transocean's" United States Headquarters. Moreover, all of these GSF employees routinely traveled to and from Houston and communicate on a regular, often basis with individuals in Houston, Texas regarding their employment with "Transocean". In short, all GSF employees including Mr. Ogden believe that they are employed by an American company operating out of 4 Greenway Plaza in Houston, Texas. As shown below there is abundance evidence to support this conclusion on their part.

The entity known as Transocean Offshore Deepwater Drilling Inc (TODDI) is similarly very involved in this matter. TODDI, through its employees in Houston, Texas appears to be acting as a borrowing employer, if not direct employer, of the GSF employees including Mr. Ogden. TODDI is also the entity that has issued and continues to issue maintenance checks to Mr. Ogden. And TODDI sent Mr. Ogden a Voluntary Payments Agreement, agreeing to make what it termed 'voluntary' payments to him in connection with his injury.

**Factual Background**

In 2007 the entity known as Transocean-Sedco Forex merged with the entity known as Global Santa Fe Offshore Corporation. This formed what became commonly known as "Transocean" in the drilling industry.[2] There were numerous corporate entities which continued to be used following the merger of these large corporations. Important for purposes of this matter, there was an entity known as GlobalSantaFe Offshore Services which was actually operating prior to the merger. This was an entity formed and existing with employees prior to the Transocean/GlobalSantaFe merger.[3]

---

[2] Attached hereto as Exhibit 2 please find merger information.
[3] Please see 30(b)6 deposition testimony of Bradley McKenzie attached as Exhibit D to Defendants' Motions herein.

After the merger, within approximately one year it appears that a decision was made to reorganize the corporate structures whereby any American resident who was assigned to work on oil rigs located outside of the Gulf of Mexico in foreign locations would receive his payroll through the GlobalSantaFe Offshore Services entity. TODDI employee Bradley McKenzie explained the history of GSF during his 30(b) 6 deposition (taken in the *James Johnson v. GSF, et al* matter. This deposition is attached as Exhibit D to Defendants' Motions herein, Document 7 in the Record and will be referenced as a part thereof). Mr. McKenzie currently serves as "global payroll manager" working out of 4 Greenway Plaza in Houston, Texas. He has worked out of 4 Greenway Plaza for approximately the last four years.[4] Mr. McKenzie receives his W-2, and is employed by, Transocean Offshore Deepwater Drilling, Incorporated.[5] Mr. McKenzie explained during his deposition that GSF issues W-2 forms to approximately 300 U.S. workers who work outside of the Gulf of Mexico on oil rigs operated by "Transocean".[6] Mr. McKenzie also stated that "roughly probably 40" Louisiana residents received their W-2 forms from GSF in 2010 as well as 2011.[7] Mr. McKenzie explained that GSF actually existed at the time of the merger between Transocean and Global Santa Fe Offshore Corporation. Significant for the motion now before this court, GSF was not a newly created "payroll" entity following the merger. Instead, it was an already ongoing, operating entity which merely became the property of Transocean through the merger.[8] Mr. McKenzie explained that there were already individuals receiving W-2 forms from the entity known as GSF prior to the merger and that following the merger some of these individuals were simply moved from one corporate entity to another depending upon where the employee was placed and where their rigs were located.[9] [Although

---

[4] Rec. Doc. 7, Exhibit D, Pages 5 through 7.
[5] Rec. Doc. 7, Exhibit D, Page 5.
[6] Rec. Doc. 7, Exhibit D, Page 9 through 12.
[7] Rec. Doc. 7, Exhibit D, Page 15.
[8] Rec. Doc. 7, Exhibit D, Page 13.
[9] Rec. Doc. 7, Exhibit D, Page 13.

Mr. McKenzie was not asked directly, it appears from his testimony that GSF issues all of its W-2 forms to American citizens, i.e.) by definition its only employees are American citizens who work overseas. McKenzie explained that any foreign non-American workers would be issued W-2 forms from a separate foreign registered and located Transocean entity. See discussion infra.]

Mr. McKenzie further explained "Transocean" does operate foreign non-United States run corporate entities in other countries. These entities serve as the employers and payroll issuers for the non-American employees of "Transocean". Mr. McKenzie explained that "Transocean" has several local offices throughout the world and that those local offices typically provide payroll and payroll services for the 'Transocean" employees of those countries.[10]

In regard to the operations conducted out of 4 Greenway Plaza which relate to GSF, Mr. McKenzie explained that all GSF payroll is administered out of the 4 Greenway Plaza location.[11] The payroll department in Houston that administers the payroll for GSF is actually comprised of employees who receive their W-2 forms from Transocean Offshore Deepwater Drilling, Inc.[12] The immigration department located at 4 Greenway Plaza handles all of the immigration issues for the GSF American citizens who travel to work overseas. This immigration department, located at 4 Greenway Plaza in Houston, Texas, is staffed by employees who receive their W-2 forms from Transocean Offshore Deepwater Drilling, Inc.[13] All requests for money to be transferred into the bank account of GSF are originated at 4 Greenway Plaza by the treasury department which is staffed by individuals who receive their W-2 forms from Transocean Offshore Deepwater Drilling, Inc. Mr. McKenzie himself has requested money transfers in order to satisfy the GSF payroll and he has had the authority to

---

[10] Rec. Doc. 7, Exhibit D, Page 16-18.
[11] Rec. Doc. 7, Exhibit D, Page 20-21.
[12] Rec. Doc. 7, Exhibit D, Page 20-22.
[13] Rec. Doc. 7, Exhibit D, Page 29-30.

receive these into the GSF bank account.[14] The ability to terminate a GSF employee's pay would ultimately occur at 4 Greenway Plaza in the payroll department which is staffed entirely by individuals who receive their W-2 forms from Transocean Offshore Deepwater Drilling Inc.[15]

Finally, Mr. McKenzie testified that he has never been to the Cayman Islands and that any work that he has performed for GSF has taken place in Houston, Texas.

The other entity in this case, TODDI, appears to have been the larger operating entity prior to the merger. Before 2009, individuals received their W-2 forms from TODDI regardless of whether they worked in the Gulf of Mexico or oversees. In 2009 the TODDI entity became the employer of any individuals working on rigs in the Gulf of Mexico. Most importantly, however, the TODDI entity is also the entity which appears to employ all of the workers at the 4 Greenway Plaza building in Houston, Texas. Mr. McKenzie explained this during his 30(b) 6 deposition as referenced above. These individuals include the people who issue payroll, the individuals who assist with arranging for travel to and from locations as well as other administrative and operational individuals.

Undersigned counsel has personally been involved at least two prior cases in which the GSF/TODDI relationship has been explored and developed. Undersigned counsel represented Elaine Killingsworth individually and on behalf of her deceased husband, Winfred Killingsworth. Mr. Killingsworth suffered a heart attack while working for "Transocean" off the coast of India. Suit was filed in the Eastern District of Louisiana and GlobalSantaFe was named as his Jones Act employer. This was because Mr. Winfred received his W-2 from GlobalSantaFe Offshore Services at the time of his death. In regard to TODDI, Mr. Winfred had previously received his W-2 from TODDI up until 2009 at which time his W-2 changed to GFS.[16] This is

---

[14] Rec. Doc. 7, Exhibit D, Page 33; Page 36.
[15] Rec. Doc. 7, Exhibit D, Page 45.
[16] Attached as Exhibit 3 please find redacted SSA printout for Mr. Killingsworth.

entirely consistent with the testimony of Mr. McKenzie and the above explanation of the GSF/TODDI relationship.

Then, approximately a year later undersigned counsel filed suit against GSF again, this time on behalf of GSF employee Kenneth Anderson, a 38 year old OIM who suffered a lower back injury while working on a "Transocean" rig off the coast of India. Mr. Anderson's work history with "Transocean" exactly mirrored that of Mr. Killingsworth. Note that these individuals did <u>not</u> work on the same rigs or on the same drilling locations. Mr. Anderson had worked in the Gulf of Mexico and eventually he went oversees during his employment with Transocean. Up until 2009 he, like Mr. Killingsworth, received his W-2 from TODDI. Then, in 2009 his W-2 was changed to come from Global Santa Fe Offshore Services which listed 4 Greenway Plaza, Houston, Texas as its principal place of business.[17]

Both Mr. Anderson and Mr. Killingsworth had extensive, and almost exclusive, dealings with the building located 4 Greenway Plaza Houston, Texas throughout their employment with "Transocean" [meaning TODDI and/or GSF depending upon the year]. As the court is no doubt aware, these employees commonly referred to themselves as "Transocean" employees regardless of whether their W-2 comes from TODDI or GSF. Transocean bills itself as a "family" for these employees and all of its literature simply bears the name Transocean regardless of the W-2 issue or for the specific individual.

For purposes of this matter, Mr. Ogden has been questioned regarding the entity known as "Transocean (Mediterranean and Red Sea) Drilling Limited, a Cayman Islands Corporation." Mr. Ogden has no knowledge of this entity nor did he ever hear the name of this entity until questioned about it from his counsel in this case.[18]

---

[17] Attached as Exhibit 4 please find redacted SSA records of Mr. Kenneth Anderson and redacted W-2 forms of Mr. Kenneth Anderson.
[18] Attached as Exhibit No. 5 please find affidavit of Mr. Steven Ogden.

Defendants complain in their motion that plaintiff's counsel "knows" that TODDI operates on a mostly domestic basis and "almost certainly had nothing to do with the operations of this particular rig." Defendants further contend that the "oversees operations are virtually always conducted by foreign Transocean entities." These statements could not be further from the truth. This is the heart of the charade being attempted by these corporate defendants on the American citizens whom they employ out of Houston, Texas. In regard to the role that TODDI plays in all of this, it appears that TODDI itself is the actual employer of the individuals, including Mr. Ogden, who work oversees. This is based upon the fact that all employment related decisions for these individuals, including Mr. Ogden, are made out of the 4 Greenway Plaza building by employees employed by TODDI. See deposition testimony of Mr. McKenzie above.

TODDI played a particularly active role in this case. Following his injury in this case, on April 19th, 2012, Mr. Ogden was sent a document regarding the payment of what were described as voluntary advances to be received in addition to his maintenance payments. This document was sent to Ogden by adjustor Robyn Thompson with Shuman Consulting, Transocean's well known adjusting firm. This document states that Shuman was assisting "Transocean Offshore Deepwater Drilling, Inc" with the handling of the claim, and that "Transocean Offshore Deepwater Drilling has determined that you are eligible for an offer of monetary advances under the Transocean Offshore Deepwater Drilling, Inc. Voluntary Compensation Program." The document goes on to state that TODDI would ultimately be entitled to a credit or offset for any such payments and that Ogden was agreeing to make a "good faith effort" to resolve any legal liability "through direct negotiations with Transocean Offshore Deepwater Drilling Inc and/or its

representatives" once Ogden reached MMI.[19] Mr. Ogden signed this document, sent it back to Shuman and began receiving payments from TODDI until suit was filed, when such benefits were wrongfully terminated. When plaintiff left to travel overseas to Cairo, he was given a letter which states that he was an employee of "Transocean Offshore Drilling Company" (presumably this meant TODDI).[20] Finally, plaintiff attaches hereto actual maintenance and "voluntary compensation" checks which he has been paid from TODDI since his injury.[21]

GSF argues that it is simply a "pay master". Even though in this matter GSF refuses to admit 'employer' status, it has already admitted such in two Texas Federal Court cases. In *Sammy Valchar v. Transocean, Inc. and Global Santa Fe Offshore Services, Inc.*, Civil Action 09-0001, Southern District of Texas, Houston Division, Mr. Valchar filed a Jones Act suit against defendants Transocean, Inc. and GSF. In *Valchar* GSF (1) admitted in its answer that it actually employed Mr. Valchar as an "employee" and (2) did not object to personal jurisdiction in Texas, indeed admitting the Plaintiff's allegation that:

> Defendant, Global Santa Fe Offshore Services, Inc. ("Global Santa Fe") is a Cayman Island corporation whose principle place of business is in Houston, Harris County, Texas.[22]

*Valchar* is not the only matter in which GSF has presented itself in court as the "employer" of individuals to whom it issues W-2 forms. In *Global Santa Fe Offshore Services, Inc. v. Victor Paul Nichols*, Civil Action 08-2283, United States District Court for the Southern District of Texas, Houston Division, GSF voluntarily entered the federal courts and filed a Complaint for Declaratory Judgment against its employee/seaman Victor Paul Nichols. In attempting to obtain a declaratory judgment that Mr. Nichols was not a seaman, GSF represented

---

[19] Attached as Exhibit 6 please find referenced Voluntary Compensation Program document sent to and signed by Mr. Ogden.
[20] Attached as Exhibit 7 please find referenced letter.
[21] Attached as Exhibit 8 please find checks from TODDI.
[22] Attached as Exhibit No. 9 please find the original Complaint in the Valchar matter, and attached as Exhibit No. 10 please find GSF's answer, Item 3.

to the court in its complaint for declaratory judgment that, "On February 15, 2008, Mr. Nichols was employed by Global [Santa Fe Offshore Services, Inc.] and working onshore at a shipyard in Singapore."[23]

### I.  TODDI Is A Properly Named Defendant In This Case;

Plaintiff has alleged that TODDI and GSF are essentially operating as a Single Business Enterprise and/or TODDI acts as a borrowing employer of Mr. Ogden by virtue of the significant involvement that TODDI has in the day-to-day activities of Mr. Ogden. See the deposition of Mr. McKenzie above.  Additionally, TODDI is the entity paying maintenance benefits to Mr. Ogden and it is the entity that started, and then wrongly terminated, what it called advances.[24]

### II.  GSF Is Not Simply A "Pay Master":

Plaintiff's counsel has never heard the term "pay master" until dealing with GSF counsel on these last few cases.  There are well known labor brokers who hire seamen then loan or assign them out, and these brokers retain a small portion of the payments made to the seaman by the ultimate borrowing employers.  Defendants propose an entirely different entity.  They seek to create a shell corporation that would provide a defense to Jones Act claims by virtue of frustrating, and obscuring, the seaman's ability to identify his employer under the Jones Act. GSF's entire argument was directly addressed and rejected in *Spinks v. Chevron*, 507 F.2d 216 (5th Cir. 1975) (overruled on other grounds).  The Fifth Circuit specifically recognized that a seaman's true employer would not be determined by virtue of random, unpredictable contracts entered into without the knowledge of the seaman and over which he had no control. *Spinks* held:

---

[23] Attached as Exhibit No. 11 please find complaint for declaratory judgment filed by GSF, Paragraph 6.
[24] Mr. Ogden maintains that these additional payments were maintenance necessary for him to pay his monthly bills on land.  He is now woefully under paid and will seek punitive damages for TODDI's wrongful lowering of his maintenance benefits.

>Much of the difficulty in this area stems from the Supreme Court's dictum in Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 791, 69 S.Ct. 1317, 1322, 93 L.Ed. 1692, 1698, that '. . . under the Jones Act only one person, firm, or corporation may be sued as employer'. In that case the court held only that a seaman could have no Jones Act recovery from a general shipping agent when his wartime employer was the United States. Moreover, it has been held that a seaman may have but one Jones Act employer.
>
>**<u>If this means that an injured seaman must speculate at his peril on whether the trial court ultimately will find him a borrowed employee of the shipowner, or an employee of his immediate employer, we reject the theory. Such a rule can result in defeating Jones Act rights through contractual manipulations.</u>** See Mahramas, 471 F.2d at 173 (Oakes, J. dissenting), Hanks, 280 F.Supp. at 738. We see nothing offensive in suing an immediate employer under the Act, or even both employers in the alternative. The defendants can sort out which between them will bear the final cost of recovery, either through common law indemnity or contribution principles, or contractual provisions, as in the instant case. This is especially important in the area of offshore drilling operations, where oil exploration companies customarily contract for all labor.[25]

In this case, GlobalSantaFe is seeking to make Mr. Ogden "search out" his true employer. Mr. Ogden had no knowledge of any entity known as "Transocean (Mediterranean and Red Sea) Drilling Limited, a Cayman Islands Corporation" as he never received any pay from this company, was never told that he was employed by this company, and indeed was not familiar with such company until the time of this suit. The method by which an enormous international corporation enters into random contracts through its multitude of shell corporations is not determinative of the seaman's employment status. <u>Mr. Ogden should be required to look no further than his W-2 form which was the holding of Spinks</u>. It is particularly important in this case when we are dealing with an enormous international corporation with thousands of employees across the world and a clear history of entering into separate drilling contracts for each rig at each different location. Many of these separate contracts are required by the local countries in which they are seeking to operate. If defendants'' "paymaster" theory is upheld, one

---

[25] Spinks, 507 F.2d 216 at 225 (emphasis added).

can only imagine the numerous shell corporations which would be formed to sign contracts for maritime work, so that the Jones Act employer could later claim that the seaman was not an employee of payroll issuer, but rather an employee under the contract covering the job at the time.

### III. GSF Has Sufficient Connections To Louisiana To Warrant Personal Jurisdiction:

Personal jurisdiction exists in Louisiana against GSF for at least three reasons. First, specific jurisdiction exists in this matter in regard to the connections that GSF had with the State of Louisiana in regard to Mr. Ogden and this case. Moreover, under Rule 4(k)(2) this court is allowed to look beyond GSF's connections with the State of Louisiana and to its connections with the United States as a whole. Finally, there is strong evidence that GSF and TODDI are operating as a Single Business Enterprise such that for purposes of jurisdiction, TODDI's contacts with Louisiana should be considered by the Court.

#### i. *Specific Jurisdiction Exists In This Case:*

As testified to by Mr. McKenzie, GSF employs approximately 40 individuals who live in the State of Louisiana. In this matter, Mr. Ogden was flown by GSF into New Orleans immediately following his injury. GSF also used New Orleans as a final flight destination for Mr. Ogden on his hitch immediately prior to the hitch during which his accident occurred.[26] He was also sent to physicians in Baton Rouge at the insistence of, and selection of, GSF's agent (or TODDI's agent depending upon the view you take on the GSF/TODDI Single Business Enterprise theory). Mr. Ogden's medical treatment, selected and paid for by GSF, has taken place in Louisiana following the accident.[27] Also, there is a maintenance and cure claim in this matter including a claim that GSF has arbitrarily and wrongfully lowered the maintenance

---

[26] Please see Affidavit of Mr. Ogden attached as Exhibit 5.
[27] Please see medical appointment information sent to Mr. Ogden via email, attached hereto as Exhibit 12.

benefits that it is paying to Mr. Ogden. Presumably the lowering of such benefits was based upon the fact that suit was filed which was filed in Louisiana.

Plaintiff relies upon Shipley v. Excell Marine Company, 2007 W.L. 3046638 (E.D.La. 2007) in which this Court relied upon, in part, the fact that plaintiff received, and defendant paid for medical care in Louisiana. In Shipley, this Court discussed Hall v. Environmental Chemical Corporation, 64 F. Supp. 2d 638 (S.D.Tex. 1999), Potts v. Cameron Offshore Drilling Boats, Inc, 401 F. Supp. 2d 733 (S.D.Tex. 2005) and Coats v. Penrod Drilling Corporation, 5 Fed 3d 877 (5th Cir. 1993). In Hall, the Court relied in part upon the fact that defendant mailed the plaintiff's paychecks to the plaintiff's residence in the forum state and that the plaintiff received medical care in the forum state, some of which was paid for by the defendant. Similarly, in Potts, the Court relied upon, in part, that plaintiff received medical care in the forum state and defendant made maintenance and cure payments to the plaintiff in the forum state. In the earlier case of Coats, the Fifth Circuit similarly relied upon the fact that the plaintiff received medical treatment in the forum state of Mississippi, most of which was paid for by the defendant. All of these cases establish that receiving medical treatment in the State of Louisiana, as well as the payment of such medical treatment, supports personal jurisdiction in Louisiana.

In regard to Mr. Ogden, he himself was required to come to the State of Louisiana on multiple occasions prior to his injury. Before he could even leave for Egypt, he was required by GSF to undergo an International Physical which included immunizations. This was done at Pelican State Medical Clinic located in New Orleans. [28] He also received his HUET (Helicopter Underwater Egress Training) classes and certification in Houma, Louisiana at Alford Services.[29]

Finally, GSF appears to require at least one of its OIM's located in Louisiana to work from home during his 28 days 'off'. Mr. Kenneth Anderson previously provided an Affidavit

---

[28] Please see Certificate of Fitness form attached as Exhibit 13, noting that it states examination was done at Pelican Medical Clinic. Please also see Affidavit of Mr. Ogden, Exhibit 5.
[29] Affidavit of Mr. Ogden, Exhibit 5.

explaining that he would routinely have calls to and from the rig while he was at his house in Louisiana.[30] While Mr. Anderson's activities may not relate directly to the accident of Mr. Ogden, they do show the involvement that GSF has within the State of Louisiana.

### ii.     *Jurisdiction Exists Under Rule 4(K)(2):*

In cases in which a defendant contests personal jurisdiction in an individual state, jurisdiction may still be conferred within that state under Rule 4(k)(2). Rule 4(k)(2) applies if: (A) The defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) Exercising jurisdiction is consistent with the United States Constitution and laws. This rule has been applied in cases brought under the general maritime law, where the defendant has sufficient minimum contacts with the United States as a whole but is not subject to jurisdiction in any particular state.[31] The critical question is whether or not the defendant concedes jurisdiction in another state. If not, a court may use Rule 4(k)(2) to confer jurisdiction.[32] In other words, if GSF is unwilling to concede that it is subject to personal jurisdiction in another state of the United States, this Court is then entitled to look to the totality of GSF's contacts with the United States in order to confer personal jurisdiction within Louisiana under Rule 4(k)(2).

In past cases filed in Houston, Texas, GSF has objected to personal jurisdiction in the State of Texas. In Devon Energy Production Company, LP et al v GlobalSantaFe South America, LLC et al, Southern District of Texas, 06-2992, GSF was involved in a large commercial litigation claim filed by Devon Energy Production, et al. which arose out of damage and production losses caused when the Adriatic 7 Mobile Offshore Drilling Unit broke loose during Hurricane Rita and rammed into an offshore oil and gas platform owned and operated by the plaintiffs. At issue was whether the matter would be handled in the Southern District of

---

[30] Attached as Exhibit 14 please find Affidavit of Kenneth Anderson.
[31] Please see *Hunter v. Serve-Tec, Inc.,* 2009 WL 2447999 (E.D.La. 2009 Judge Kurt Engelhardt (citing *World Tanker Carriers Corporation v. M/V Ya Maw-Laya,* 99 F.3d 717, 722-23 (5th Cir. 1996)).
[32] Please see *Hunter*, 2009 WL 24479999 at *5 (citing *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004)).

Texas where Devon had originally filed the suit, or in the Western District of Louisiana. GSF had been named as an original defendant <u>and objected to personal jurisdiction within the State of Texas.</u>[33] It would be entirely inconsistent and fraudulent for GSF to now argue to this Court that personal jurisdiction exists within the State of Texas when less than four years ago GSF filed pleadings in federal court in Texas arguing that it was not subject to personal jurisdiction within the State of Texas. Therefore, if personal jurisdiction does not exist against GSF within the State of Texas and GSF appears herein arguing that it is not subject to personal jurisdiction within the State of Louisiana, plaintiff submits that under Rule 4(k) (2) there is simply no proper State within the United States to obtain personal jurisdiction over GSF, such that this Court can invoke jurisdiction under Rule 4(k) (2).[34]

### iii.   *The SBE Theory Applies In This Case:*

Under the Single Business Enterprise theory, this Court may look to the contacts of TODDI with the State of Louisiana to determine if jurisdiction exists as to GSF, provided certain SBE criteria are met as between TODDI and GSF. See <u>Bona Fide Demolition v. Crosby</u>, 690 F.Supp 435 (E.D.La. 2010). In this case, there is evidence that many of these criteria are satisfied.

The testimony of Mr. McKenzie establishes that the real enterprise behind GSF is TODDI. TODDI employees effectively run GSF. These TODDI employees make decisions regarding processing of payroll for GSF, transferring of funds into and out of GSF bank accounts and ultimately provide signatures in regard to hiring and firing individuals for GSF. Multiple,

---

[33] Attached as Exhibit 15 please find objection by GSF to Jurisdiction in Texas in the Devon Energy matter. Paragraph I, "First Defense" states that "…this Court [Texas] lacks personal jurisdiction [over GSF]."

[34] Presumably Texas would be the most logical location given that GSF lists its principle place of business as 4 Greenway Plaza on the W-2 it issues to more than 300 employees. **Nonetheless, plaintiff submits that the Devon Energy matter should effectively preclude GSF from arguing in this case that it is now conveniently subject to personal jurisdiction in Texas. GSF must live with its previous pleadings refusing personal jurisdiction within the State of Texas, thereby allowing this Court to obtain jurisdiction under Rule 4(k)(2) in this matter.**

and significant, business related decisions and actions are made at 4 Greenway Plaza. According to Mr. McKenzie, all employees at 4 Greenway Plaza receive their W-2 forms from TODDI. Without Greenway Plaza [read TODDI employees] there would be no GSF. At a minimum, plaintiffs have set forth a prima facie case that TODDI and GSF may be operating as a single business entity. Therefore, the Louisiana actions and contacts of TODDI, and ultimately the personal jurisdiction over TODDI in Louisiana, may be a consideration in deciding if personal jurisdiction exists as to GSF.

### IV.    GSF Is A Properly Named Defendant:

GSF next argues that it is not a properly named defendant in this case. They provide little basis for this statement other than its own self-serving unsupported arguments that it was simply a "pay master" and did not maintain any type of operational control of the rig. Candidly, plaintiff's counsel does not fully understand this argument. Mr. Ogden as well as numerous co-employees including his immediate supervisors are residents of the United States of America.[35] According to the testimony of Mr. Bradley McKenzie, these individuals by definition received their W-2 forms from GSF. Plaintiff has simply named his Jones Act employer (as per his own paycheck stub) in this case. The negligent acts which caused or contributed to his injury were performed by his co-defendant employees who, being American citizens, also received their W-2 forms from GSF. Not only did GSF employ plaintiff (as his Jones Act employer) but it also employed co-employees (the negligent acts for which it is liable under the Jones Act). GSF is a properly named defendant in this matter.

### V.    Venue Is Proper In This District:

Finally, defendants argue that venue is not proper in this district. Notably at the outset of this argument defendants ask the court to ignore TODDI as a defendant. TODDI must do this

---

[35] Please see affidavit of Mr. Steven Ogden, Exhibit 5.

because on at least two occasions it has affirmatively filed actions in the Eastern District for Louisiana [*Transocean Offshore Deepwater Drilling, Inc. v. Cajun Enterprises of M.C., Inc.*, 10-cv-00193-MVL-JCW, and *Transocean Offshore Deepwater Drilling, Inc. v. Powell*, 06-cv-06088-KDE-SS]. Indeed in the *Cajun Enterprise* matter, GSF's current counsel in this matter filed the suit on behalf of TODDI and affirmatively plead that TODDI was a foreign corporation "doing business in this district and state…"[36]. Therefore, defendants must first require this court to ignore that TODDI is a defendant in order to make any plausible objection to venue in this case. Because TODDI has been named as a proper defendant, venue is established in this district.

Moreover, even based on GSF alone, venue is proper. As explained above, plaintiff has received extensive medical treatment from a facility in Baton Rouge, Louisiana. Prior to his injury plaintiff received an International Physical medical examinations in southeast Louisiana in Pelican State Clinic located in New Orleans. In this case witnesses will no doubt need to be called from both of these various locations. Plaintiff is currently treating with Dr. Bradley Bartholomew who practices in New Orleans, Louisiana. The plaintiff's treating physician will play a critical role in his case and it is important for the treating physician to be available for live trial testimony. Finally, the actions in wrongfully lowering plaintiff's maintenance benefits presumably occurred based on advice of counsel whose office is located within New Orleans.

VI. **To The Extent The Court Is Inclined To Grant Any Of The Defendants' Motions To Dismiss, Plaintiff Requests Additional Time To Conduct Jurisdictional And Other Discovery:**

There has been no discovery, jurisdictional or otherwise, which has been conducted in this case. The facts establish that plaintiff received his paycheck stubs from defendant, GlobalSantaFe Offshore Services and that this entity listed 4 Greenway Plaza as its principal

---

[36] Attached as Exhibit 16 please find Cajun Enterprises suit, paragraph 2.

place of business. There is overwhelming evidence that plaintiff had continuous ongoing interactions with individuals located at 4 Greenway Plaza in Houston, Texas, and that TODDI was the entity with ultimate control over plaintiff's day to day work activities. Moreover, defendant TODDI has previously filed suits within this district and has admitted that it is subject to jurisdiction in this district. Plaintiff believes that all motions filed by defendant should be denied at this time. However, to the extent the court is inclined to grant one or all of the motions, plaintiff requests that additional time be allowed to conduct any necessary discovery in regard to jurisdictional or venue issues. Plaintiff does not believe such is necessary at this stage to defeat all pending motions, but nonetheless requests same out of an abundance of caution.

Respectfully Submitted,

  /s/ *Timothy J. Young*_____
TIMOTHY J. YOUNG (22677)
JASON C. MACFETTERS (29617)
TAMMY D. HARRIS (29896)
**THE YOUNG FIRM**
400 Poydras Street, Suite 2090
New Orleans, LA 70130
Telephone: (504) 680-4100
Facsimile (504) 680-4101

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been electronically filed with the Clerk of Court using the CM/ECF system this 6th day of November, 2012. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system and/or U.S. Mail.

  /s/ *Timothy J. Young*
TIMOTHY J. YOUNG